IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARY ANN LAREMONT-LOPEZ,

   Plaintiff,

   v.             CIVIL ACTION NO. 2:06cv290

VIRGINIA DEPARTMENT OF HEALTH
(PORTSMOUTH),

   Defendant.

*MEMORANDUM OPINION & ORDER*

   This matter is before the Court on the Virginia Department of Health (Portsmouth)'s

("Defendant") motion for summary judgment, Mary Ann Laremont-Lopez's ("Plaintiff") motion

for reconsideration, and Plaintiff's motion to continue.  Having carefully reviewed the parties'

pleadings, the Court finds this matter ripe for judicial determination.  For the reasons below,

Defendant's motion for summary judgment is **GRANTED**.  Plaintiff's motions for reconsideration

and for a continuance are **MOOT**.

## I.  FACTUAL AND PROCEDURAL HISTORY

   For the purposes of this summary judgment motion, the Court assumes the following facts

to be true.[1]  Plaintiff began work for the Portsmouth Health Department ("PHD") on February 1,

---

[1] Rule 56(B) of the Local Rules of the United States District Court for the Eastern District
of Virginia requires that a motion for summary judgment include a list of undisputed facts.  The

1997 as a health educator.  Plaintiff's duties included, among other things, alerting individuals to

health risks, identifying ways to control the spread of disease in the community, and educating the

community about health-related issues.  The grant of funds for Plaintiff's position expired, and on

January 1, 2004 Plaintiff transferred to the new position of Health Counselor in lieu of a layoff.

Plaintiff was supervised alternately by Gwendolyn Childs and Carol Canada at various times

during her employment with the PHD.

Plaintiff filed several grievances during her employment with the PHD.  Plaintiff filed a

grievance on April 21, 2003, alleging that she was being retaliated against for questioning her

salary.  Plaintiff had received two counseling memoranda from her supervisor, and Plaintiff

asserted that these were in retaliation for her complaint that she was being paid less than the budget

authorized for her position.  The first memorandum required Plaintiff to take four full days of leave

when the supervisor could not verify Plaintiff's arrival time, despite Plaintiff's assertion that she

reported to work at some point on the days in question.  Defendant eventually credited Plaintiff

with working on three of the four days.  The second memorandum required Plaintiff to remove the

"M.D." designation from Plaintiff's business cards, because although Plaintiff has a medical

degree from a foreign nation, Plaintiff is not a licensed physician in the Commonwealth of

Virginia.  The Virginia Department of Employment Dispute Resolution ("EDR") considered

Plaintiff's grievances respecting these two memoranda.  The EDR determined that Plaintiff did not

submit her leave slips according to Defendant's policy, and that the removal of "M.D." from her

business cards did not amount to an adverse employment action.

---

Court assumes that any facts alleged in the motion for summary judgment are admitted unless
controverted by the responding opposition brief.

On June 2, 2004, Plaintiff was alone inside an elevator at Defendant's facility when the building lost power. The lights in the elevator switched off and the elevator dropped an unknown number of feet. Plaintiff was trapped in the elevator for about forty-five minutes. After this incident, Plaintiff began to experience severe anxiety at work. Plaintiff filed a worker's compensation claim and sought treatment.

On August 10, 2004, Plaintiff received a written disciplinary notice for disruptive behavior and failure to follow her supervisor's instructions. On August 13, 2004, Plaintiff filed another grievance to challenge this notice. Plaintiff's alleged disruptive behavior involved her communications with her supervisor concerning sick leave and her worker's compensation claim. A hearing was held on this matter on January 24, 2005 before an EDR hearing officer. The EDR hearing officer determined that Plaintiff's disruptive behavior included sending false emails to her supervisor, such as an email alleging that Plaintiff could no longer use any sick leave and would be terminated for doing so. The EDR hearing officer did, however, reduce the severity level of Plaintiff's alleged violation.

On August 23, 2005, Plaintiff received a second written disciplinary notice. This notice was for failure to report to work without proper notice to her supervisor and failure to follow her supervisor's instructions. The notice concerned Plaintiff's attendance at an off-site training event that Defendant asserts Plaintiff did not have approval to attend.  On September 1, 2005, Plaintiff received a third written disciplinary notice for unauthorized use of state property and abuse of state time and resources. As this was Plaintiff's third active written notice, Plaintiff was terminated on September 1, 2005.

Plaintiff filed the complaint in the instant case on June 23, 2006. Defendant answered on

3

September 15, 2006.  Defendant filed the instant motion for summary judgment on February 9, 2007.  On March 9, 2007, Plaintiff filed a motion for reconsideration that appears to address the final pretrial order that was also filed on March 9, 2007.  On March 14, 2007, the Court granted Plaintiff additional time to file a response to Defendant's motion.  Plaintiff filed a response on March 15, 2007.  Plaintiff filed additional documents on March 23, 2007, March 26, 2007, and March 27, 2007 subject to defect.  These additional responses appear to be primarily addressed to Plaintiff's objections concerning the final pretrial conference.  However, because they are in substance concerned with the merits of the case, and considering Plaintiff's status as a pro se litigant, the Court will consider them in deciding the instant motion for summary judgment.  Plaintiff also filed a motion to continue her case on March 23, 2007.  Finally, Plaintiff filed yet another response to Defendant's motion for summary judgment on March 29, 2007, subject to defect.  Again, considering Plaintiff's pro se status, the Court will consider this filing in deciding Defendant's summary judgment motion.

## II.  LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) (stating that "summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law")).  In deciding a motion for

summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

## III.  DISCUSSION

Plaintiff's complaint alleges unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2000) ("Title VII").  Plaintiff alleges intentional discrimination on the basis of national origin as well as unlawful retaliation.  The Court will liberally construe Plaintiff's pro se complaint to state claims for discriminatory firing, hostile work environment, and unlawful retaliation.

**A.  Unlawful Discrimination Claim**

The Court will first address Plaintiff's claim for discriminatory firing.  Title VII provides that, "It shall be an unlawful employment practice . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a).  Under Title VII, "the plaintiff bears the initial burden of proving a prima facie case of discrimination by raising an inference that the defendant acted with discriminatory intent."

*Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). Plaintiff can satisfy this burden with direct evidence of discriminatory intent or the *McDonnell Douglas* burden-shifting scheme. *Id.* at 1227-28. Under the *McDonnell Douglas* scheme, once Plaintiff establishes a prima facie case of racial discrimination, the burden then shifts to Defendant to provide a legitimate non-discriminatory reason for Plaintiff's dismissal. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The burden would then shift back to Plaintiff to show that Defendant's proffered legitimate reason is pretext for discrimination. *Id.* at 804.

Plaintiff has produced no direct evidence of discriminatory intent. Therefore, Plaintiff must proceed under the *McDonnell Douglas* scheme. In order to establish a prima facie case of discriminatory firing under Title VII, Plaintiff must show that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] job and h[er] job performance was satisfactory; (3) [s]he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). Plaintiff is a member of a protected class and was fired; however, Plaintiff fails to meet the other two requirements of the prima facie case.

First, Plaintiff cannot show that her job performance was satisfactory. Defendant has produced three written disciplinary notices that were issued to Plaintiff between August 10, 2004 and September 1, 2005. The first of these, on August 10, 2004, was for disruptive behavior. Defendant has produced the EDR hearing officer's determination that Defendant established that Plaintiff in fact engaged in disruptive behavior. Plaintiff argues that her alleged disruptive behavior was not sufficiently defined. However, Defendant has produced a detailed memorandum that was provided to Plaintiff prior to the written notice being issued that specifically details

6

exactly what behavior concerned Defendant.  One of the allegations of disruptive behavior involved Plaintiff's complaint that she was told that she would be terminated for taking any more sick leave.  The Court notes that this particular complaint is contradicted by a document Plaintiff herself produced that states that Plaintiff's supervisor informed her that, "Future sick leave requests *may* be denied."  (Pl.'s Resp. filed March 23, 2007, Ex. 4).  The EDR hearing officer determined that Plaintiff knew or should have known that her allegation that she would be fired for taking sick leave was inaccurate.

In addition, Plaintiff has not presented any evidence to rebut her other two written disciplinary notices.  The August 23, 2005 notice was given primarily because Plaintiff attended unauthorized off-site training and did not obey supervisor Canada's directive to report to work.  Plaintiff argues that supervisor Childs had previously approved the training.  However, Plaintiff does not dispute the fact that Canada spoke to her after the first day of training and directed her not to attend the second day.  Plaintiff disregarded this direction.  As to the September 1, 2005 written disciplinary notice, Plaintiff does not contest Defendant's documents that show a large number of personal files were created on Plaintiff's work computer, for which she was the only assigned user.  Plaintiff also does not rebut Defendant's documentation of Plaintiff's extensive use of her work telephone for personal purposes.  In conclusion, while Plaintiff attempts to explain some of her behavior that led to her eventual termination, Defendant has produced a large, well-documented file detailing Plaintiff's unsatisfactory job performance.

In her March 29, 2007 response, Plaintiff does produce a certificate for "outstanding teamwork, participation, & vision" that she was awarded on October 11, 2001.  (Pl.'s Resp. filed March 29, 2007, p. 3).  Plaintiff also received a certificate of completion for OSHA training on

April 29, 2004.  Finally, Plaintiff has presented letters from various individuals who interacted

with her who found her bilingual ability valuable.  However, none of this evidence rebuts

Defendant's well-documented file of disciplinary action.  Plaintiff's outstanding teamwork

certificate is dated several years before the disciplinary actions taken by Defendant occurred, and

approximately four years before Plaintiff was terminated.  The OSHA certificate is a certificate of

completion regarding a training course, and does not necessarily reflect directly on job

performance.  Finally, Demetria Lindsay, the Health Director of the PHD, states in an affidavit that

Plaintiff's ability to translate was not part of her job description.  (Def.'s Mem. of Law in Supp. of

Mot. for Summ. J., Encl. I, at 2).  In addition, the Employee Work Profile for Plaintiff's position

does not list translation as a job responsibility.  Plaintiff's bilingual ability may have been helpful

to her in her duties, but it does not serve to refute Defendant's evidence concerning the disciplinary

actions taken against her.  In summary, Plaintiff's evidence does not support the satisfactory job

performance prong of the prima facie case for discriminatory firing.

Plaintiff also fails to show a prima facie case of discriminatory firing because Plaintiff has

produced no evidence that any employees who are not members of the protected class were treated

differently.  In fact, Defendant has produced evidence that shows that between January 1, 2002 and

December 31, 2006, twelve non-Hispanic PHD workers were disciplined, and two of those were

terminated.  Plaintiff makes an unsubstantiated allegation that PHD policies that were enforced

against her were not enforced against her coworkers, but Plaintiff provides no evidentiary support

for this assertion.

Even if Plaintiff could establish a prima facie case of discriminatory firing, Plaintiff cannot

show that Defendant's proffered legitimate reasons for Plaintiff's termination were pretext for

discrimination.  Defendant has produced multiple documents specifically detailing Plaintiff's

performance deficiencies.  Plaintiff has produced only her own opinion.  The United States Court

of Appeals for the Fourth Circuit (the "Fourth Circuit") has held that, "While a Title VII plaintiff

may present direct or indirect evidence to support her claim of discrimination, unsupported

speculation is insufficient."  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.

1996); *see also First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) ("What

Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint

in opposition to a properly supported summary judgment motion made against him").  Plaintiff's

claim of discriminatory firing fails.

**B.  Hostile Work Environment Claim**

To the extent Plaintiff makes a claim for a hostile work environment, it too must fail.  A

hostile work environment is one that is "permeated with 'discriminatory intimidation, ridicule, and

insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment' . . . ."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

(1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  Courts determine

whether an environment is hostile or abusive by looking at all the circumstances.  *Id.* at 23.  These

can include "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  *Id.*  "[H]ostile work environments generally result only

after an accumulation of discrete instances of harassment."  *Jordan v. Alternative Res. Corp.*, 458

F.3d 332, 339 (4th Cir. 2006).

Plaintiff makes multiple allegations of harassment, but provides very few details or

evidentiary support.  Plaintiff states that she was more closely scrutinized than her coworkers.

However, the Fourth Circuit has stated that, "terms, conditions, or benefits of a person's

employment do not typically, if ever, include general immunity from the application of basic

employment policies or exemption from a state agency's disciplinary procedures." *Von Gunten v.*

*Maryland*, 243 F.3d 858, 869 (4th Cir. 2001), *abrogated on other grounds by Burlington N. &*

*Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).  Plaintiff has provided no direct or indirect

evidence of any disparate treatment regarding enforcement of Defendant's workplace policies, and

Plaintiff does not allege that the policies themselves are discriminatory.  Defendant's scrutiny of

Plaintiff's activities pursuant to Defendant's documented employment policies is not evidence of a

hostile work environment.

Plaintiff asserts several other generalized complaints to support her hostile work

environment claim.  Plaintiff states that Defendant took information from her computer without her

consent or notice.  However, Defendant's electronic communications policy clearly states that

employees have no right to privacy in their work computers, and that Defendant can monitor any

employee's use at any time without notice.  Plaintiff also complains that she was denied training

opportunities.  Nonetheless, Defendant's evidence shows that Plaintiff was approved for eighteen

training sessions between January 1, 2004 and May 31, 2005.  Defendant has provided the affidavit

of Plaintiff's supervisor stating that the reason some training was not approved for Plaintiff was

because it was unrelated to Plaintiff's work responsibilities.  (Def.'s Mem. of Law in Supp. of Mot.

for Summ. J., Encl. III, at 2).  In addition, Plaintiff makes unsubstantiated assertions that her

coworkers were prevented from speaking to her, and that her telephone usage was closely

monitored.  However, Plaintiff does not point to any specific incidents, and presents no

10

independent evidence that these allegations occurred.  Plaintiff fails to show how any of her generalized complaints altered the conditions of her employment.  *Harris*, 510 U.S. at 21-22.

Plaintiff does present one specific instance of alleged harassment.  Plaintiff states that on May 31, 2005, supervisor Childs poked Plaintiff in the shoulder while Plaintiff was sitting at her computer.  Childs denied the incident, and Demetria Lindsay, Health Director of the PHD, investigated the incident and found Plaintiff's complaint to be without merit.  Plaintiff filed two criminal assault and battery charges against Childs, both of which were eventually dismissed.  Plaintiff presents no evidence related to this incident beyond her assertion that it occurred.  Plaintiff does not allege any other instances of this type of harassment.  Even assuming Plaintiff's account of this incident is correct, this isolated incidence of "poking" cannot support a hostile work environment claim.  *See Jordan*, 458 F.3d at 339-40 (holding that an isolated, rhetorical racist remark does not create a hostile work environment).  In addition, Plaintiff does not allege how this particular incident is tied to any discriminatory intent on the part of Childs.  Plaintiff's claim of a hostile work environment fails.

**C.  Retaliation Claim**

Plaintiff's final possible claim is for unlawful retaliation.  Title VII states that, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  Plaintiff claims that Defendant unlawfully retaliated against her by terminating her after her various complaints to management.  Plaintiff carries the initial burden of establishing a prima facie case under Title VII by a preponderance of the evidence.  *McDonnell Douglas*, 411 U.S. at 802; *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th

11

Cir. 1998).

In order to establish a prima facie case of unlawful retaliation, an employee must show: "(1) that [s]he engaged in a protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). An adverse employment action includes "any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." *Id.* An employer can defend itself by producing "evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001).

Protected activities include "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. An employee is not required to "engage in the formal process of adjudicating a discrimination claim." *Id.*; *see also Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers *or* using an employer's grievance procedures." (emphasis added)). When deciding whether an employee has engaged in a protected opposition activity, the Court must balance Title VII's purpose in protecting employees who complain about discrimination against Congress' desire not to interfere with employers' objective control over their employees. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). Plaintiff's potential protected activities include filing grievances on April 21, 2003 and August 13, 2004 as well as Plaintiff's multiple complaints to her supervisors concerning her time

12

away from work, and the poking incident with Childs.

An employee's opposition activity is only protected, however, if the employee was opposed to actually unlawful activity or, if there was no actual violation, if employee reasonably believed that the employment practice she is opposing is unlawful. *Jordan*, 458 F.3d at 338-39. As discussed above, Plaintiff cannot show an actual hostile work environment. Therefore, the next question is whether Plaintiff reasonably believed that she was opposing an unlawful situation. *Jordan*, 458 F.3d at 340. The standard for determining whether such a belief is reasonable is objective and may be determined as a matter of law. *Id.* at 339; *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-07 (4th Cir. 2005). In the instant case, Plaintiff could not have reasonably believed that she was opposing unlawful activity with respect to any of her complaints. With the exception of the poking incident, Plaintiff's complaints all revolve around the application of PHD workplace policies to her activities. As discussed above, Plaintiff's argument that Defendant applied these policies in a more lenient manner toward her coworkers is completely unsupported, and Plaintiff does not complain that the policies themselves are discriminatory. Plaintiff's various complaints do not qualify as protected activities.

Likewise, Plaintiff could not have reasonably believed that the single alleged poking incident created an unlawful environment in violation of Title VII. As discussed above, the alleged incident was isolated and not repeated. Moreover, the Fourth Circuit held in *Jordan* that a court "cannot simply *assume*, without more, that the opposed conduct will continue or will be repeated unabated . . . ." *Jordan*, 458 F.3d at 341. The Court cannot infer that this alleged incident would lead to a hostile environment. In conclusion, Plaintiff fails to make a prima facie case of retaliation because she cannot show that she engaged in a protected activity.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**.

Plaintiff's motions for reconsideration and for a continuance are **MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to

counsel of record.

**IT IS SO ORDERED**.


_____/s/_____

Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 3, 2007

14